Good morning, Your Honors. May it please the Court, Joseph Horry for Appellant O'Baydul Bhuiyan. Would you wait just a minute, Counsel? We're in a transition from the prior case. So just give us a couple of seconds here. Thank you. That's fine. Chief, I was having trouble hearing with the volume as well. I'm not sure I'm going to be able to hear. I guess, too, is Counsel seated in the best place so that we can see everyone? I'm sure you can still argue in a different chair. All prior trial lawyers or appellate lawyers have their favorite chairs, but I promise you, you can still argue. And would you adjust the volume on the remote a little bit so we can hear? Increase. Very good, Counsel. We're ready for you now. Good morning, Your Honors. Can you hear me clearly? Yes, we're adjusting the volume a little bit here, but keep going. Thank you, Joseph Horry for Appellant O'Baydul Haq Bhuiyan. If I may, I'd like to reserve five minutes for rebuttal. Your Honors, Mr. Bhuiyan was preliminarily approved for a widower's green card. Now, to be eligible under the program that he applied under, a person could only have been married two years or less at the time his citizen spouse died. Mr. Bhuiyan had been married two years and four months. So he was actually ineligible for the program. He didn't know that. No one told him that. And by the time USCIS realized its mistake and revoked its approval, it was too late for him to get another status. So the result was he spent about three years as an unemployed illegal alien due to the negligence of USCIS. Now, he sued for negligence under the Federal Tort Claims Act, but his claim was dismissed on the ground that he had not shown a private party analog. Now, the Tort Claims Act allows for the United States to be liable to the extent that a private individual under like circumstances would be liable. The Supreme Court in U.S. v. Olson has held the words like circumstances there do not restrict the court's inquiry to the same circumstances, but require it to look further afield to analogous circumstances. For example, the court said private individuals who do not operate lighthouses, nonetheless, may create a relationship with private parties or with third parties that is similar to the relationship between a lighthouse operator and a ship dependent on the lighthouse's beacon. By the same token, private individuals who do not issue visas, nonetheless, may create a relationship with third parties similar to the relationship between a visa-issuing agency and persons dependent on the issuance of a visa. That's how we've alleged it in the complaint, paragraph 31. The persons who process and determine applications for benefits on the grant or denial of which applicants will foreseeably base major and potentially life-altering decisions owe a duty to such applicants to exercise reasonable care to process and determine such applications based on the correct eligibility criteria. And that's all deriving from the basic court law principle, that one who undertakes to perform a job for another is under a duty to do it with reasonable care. For example, as in the Jacques case that we've cited, a bank in processing an application for a loan. Other examples would include a college in processing an application for admission or for a scholarship. An insurer in processing an application for insurance. Counsel, let me ask you this. It appears that the law that controls that, well, there's a dispute between the parties here, whether it's the law of Vermont or the law of the Marianas Islands. It seems, you know, at first blush to me it seems most logical that it would be the law of Vermont where the visa was issued. Why is, why would you get a more advantageous result under the law of the Marianas Islands? Well, I don't know that we would do, and I think the result would be the same in either case. I think both jurisdictions recognize the principle that I just stated, and we've cited actually a case in Vermont explicitly holding that, and the CNMI follows the restatement in the common law, which also makes that, you know, follows that law. In fact, we just submitted last week to the court. So what is your best case for the private party analog? Is it the Lighthouse case? Well, the Lighthouse case certainly is, you know, that establishes the principle that you look for an analog. I suppose closer than a Lighthouse would be another, you know, processing of an application. For example, the bank we mentioned or the case we just sent to the court last week, Okay, so if you say that a bank, can you argue that the processing of visa applications is similar to that of processing a bank loan? Can you point us to a case or a statute under Vermont law, Vermont law or CNMI law that recognizes tort liability in a bank loan processing context? Do you have a case for that? I don't have a bank-specific case from either jurisdiction. I do have a CNMI case in the case, which is actually closer than a bank, in the case of a private employer who was negligent in the processing of an alien worker's visa application. An employer, as well as a government, is involved in that process. And we've submitted that to the court last week. That's the Rocky Bowl case that was submitted with our Rule 28J letter, where the employer was found liable for its negligence in processing the visa application for its foreign worker. The situation is actually in some ways quite similar to what we have here. Counsel, you're confused. Yes. It wasn't a visa application, right? It's an application, so if you could just, because I think this is your strongest case, so if you could slow down, I'd appreciate it. But it's a Superior Court decision, right? Yes, it is. You're addressing a permit issued by the Director of Labor in the Northern Mariana Islands, right? I think you just misspoke, and I want to make sure that I'm understanding the facts correctly, because I think you mentioned issuance of a visa. It's a work permit, right? Well, Your Honor, this – Not issued under federal law. Right. Well, this was back – no, it was not under federal law. This was back under the time when the CNMI controlled its own immigration. Sure, but I'm just trying to make sure – And so the work permit – Go ahead. I won't interrupt further. I'm just trying to make sure that we get this right, because I think this is your strongest case. Under CNMI law, Your Honor, those two things were dealt with in tandem. The work permit for a worker and the – they call it the entry permit, was what we would call a visa under CNMI law. It was, you know, coextensive with the work permit, which itself was coextensive with a one-year contract of employment. Right, except the problem you've got now is – And that was – the application process was all at the same – part of the same process. Exactly. And now we're trying to sort of pull these apart, because we have to look at this under the – for purposes of the Federal Tort Claims Act, we're looking for what would normally be the state analog, right? Right. That's what we would normally be looking to. So how does this case help you? Well, certainly it's – I think it's actually – the visa and the work permit are functionally the same thing. To the extent they're not, they're certainly analogous. And what we need to look for is analogous, the most reasonable analogy, the most similar situation. I think that's what we have here under CNMI law with the Rockyville case. In response to Judge Callahan's earlier question, you said you didn't think it mattered whether we were looking to Vermont or to the Commonwealth's law. Is that your position? I think the same duty is recognized under Vermont law. We cite a case in our brief that arises in Vermont that states the law and states the rule of liability in almost identical terms to what you find in the restatement that's observed in the CNMI. When you say that, are you referring to just common law negligence principles? Yeah, common law negligence, and in particular the duty of someone undertaking to perform a job for another to do it with due care. I think that's recognized in all jurisdictions. Yes? I have a couple of factual questions that were unclear from the record that you could probably clear up for me. First, when your client applied for the I-360, what prevented him from also applying for the CW-1? Well, nothing. He was not prevented from doing that. I suppose he could have applied for CW-1. So, I mean, your basic negligence argument is that he was prevented from getting a worker's permit because he was negligently granted the C-360, but he could have at the time also applied for a worker's permit. He may have chosen not to for a variety of reasons, but there was nothing that prohibited him from doing that, correct? Eventually there was. At the time he first submitted his application, no, there was not. He could have submitted it at that time. Later on, I think it was November 28th was the date that he needed to, by that point, if he were to apply, he needed to show lawful presence, which he was no longer able to show after a certain date, after November 28th. That gets me to my second question, which is when he was granted humanitarian parole and his case was reopened, my understanding is that essentially the time periods were waived. So he could come back to the Northern Marianas right now? I don't think so. I know the government has been saying that from the beginning, and I certainly hope that's true. The only law that I've seen on the subject is the Immigration and Nationality Act, which provides that a person who is unlawfully present for more than a year is inadmissible for ten years. And if that's not the case, I hope it's true that that's not the case, but I haven't seen any actual authority presented by the government to that effect. Has he tried to come back to the Northern Marianas? Excuse me? Has he attempted to come back to the Northern Marianas? No, he hasn't. Okay, thank you. I have another question just along those lines. Did the parties in this case take advantage of the Ninth Circuit mediation program? I know that there were talks in the record of trying to settle this at some point. Did you do the Ninth Circuit mediation program? Yes, we did. It was not successful. Okay. That was after the appeal was filed, you did that? Yes, we did. Okay. Counsel, I have a question sort of along the lines of Chief Judge Thomas' question. My understanding is that prior to 2009, your client or anybody seeking an I-360 needed to apply within two years and had to have been married at least two years. There was a – I don't know about the timing on that, whether prior to 2009. There was at one point a restriction on eligibility where you had to have been married more than two years. Later that was struck down in a decision somewhere in the states. And so a special – the statute was amended to provide – to allow for people who had been married for less than two years to apply. Right. And transitional – yeah. And that's where he picks up. But prior to 2009, prior to the change you're talking about in 2009, it seemed to me that nothing prevented him from filing. He would have had to file within two years from the date of his wife's death, July 7th, 2006. He would have had to file by July 7th, 2008. He didn't file until 2011. So his initial filing was time-barred under the law that existed pre-2009. Yes, it was. And before that time, before it became – before the federal takeover of CNMI immigration, he never had any intention of applying for a green card. He didn't apply during the course of his marriage or at any time after her death because his intention was only to reside in the CNMI, for which he didn't need a green card. He needed it only if he were to travel and try to reside in the U.S., which he did not plan to do. So under CNMI law, he remained eligible to live in the CNMI, which is all he wanted. It's only when it became necessary to have the green card in order to continue living in the CNMI that he needed to apply and did apply. Right. But the law changed in 2009. Right. And so then it didn't – you didn't have to – it didn't matter how long you'd been married. Except that what the law – the change in 2009 didn't do is reopen a window for those claims that had already lapsed. In other words, since he was originally – since his original filing was untimely, it didn't allow a new window for him, right? Well, the – I think it allowed a new window for him had he been married for less than two years at the time. Since he was married for more, he did not. Thank you. Thank you, Counsel. You're down to about two minutes, but we'll give you time for rebuttal. Thank you, Your Honor. Here for the government. Good morning. May it please the Court, I'm Lowell Sturgill from the Department of Justice representing the United States. The district court correctly dismissed plaintiff's FTCA claim because he can't prove a private person would be liable under like circumstances with respect to the grant, allegedly negligent grant, of his I-360. Should we look to Vermont? So, in our opinion, it doesn't matter because under the El Gamal decision, which we said in our Rule 28J letter, the question is not – at this point, the question is not whether he can identify some state law that potentially could create a negligence action, but whether that negligence action itself is sufficiently analogous to a situation in which the federal government could be liable. And under Richards, don't we look to Vermont law? I realize you're going to answer this question and tell me that it doesn't matter, but isn't that what Richards says? And it's a little anomalous because I think it says we look to where the act of remission occurred, and then it just seems to be we would look at whatever state the INS happens to have its sort of processing center in, right? Right, so that's correct. It's a little odd, but okay. Let's start that way then, right. So, yes, we think it is Vermont law for the reason you just said, and that he loses because, as the district court said, there's no sufficiently analogous Vermont law under which a private party could be liable because – Okay, but in light of Indian v. Towing, which is the 1955 case, is it necessary for Bouillon to cite a case under local law that in order to establish a private analog, or is it enough that he can point to Vermont or CNMI negligence cases? Well, I think he'd have to show something that's sufficiently similar to what's going on here, which is, again, the grant of a visa petition. And that is different from what private parties can do, and it's sufficiently different because the grant of those kinds of petitions is heavily governed by federal immigration statutes, which are heavily reticulated, and it's a closed system that tells immigration offices what they're supposed to do. And that's totally dissimilar to anything that he could allege under a Vermont statute. So is it your point that it's quasi-adjudicative? So the courts have not – yes, that's one way to put it. Courts have said different things. They've described this point in different ways. The way we look at it is there's no private party analogy that's available. That's what this court in Elgamau said. Have you read the 28J citation? I'm sorry? Have you read the 28J citation that they provided, the case? Yes. Okay. That seems to be the closest case they have, so would you talk about that? Sure. A rockable case. Right. So several things to say about it. First of all, it didn't involve a visa application, as Your Honor pointed out, which is governed by federal law, not state law. And second, even if – well, it's not a Vermont case. But that's their best case, and you basically said, well, we think Vermont law applies and should apply, but we're willing to look at both Northern Mariana's law and Vermont. So that's their argument. So, again, that statute – So you said, first of all, it's not a visa. Second, it's not Vermont. What's your third reason? So that addressed a private party's liability for that negligence, and we're saying that the grant of a visa application by a federal official is exclusively governed by the immigration statutes, which are, again, a closed-in system that heavily reticulate how officers are supposed to do this. And there's no evidence that Congress would have wanted the law of 50 states to be able to determine effectively what federal officers do in applying this. And I would cite – there are a number of cases. One is Eldermatt. The latter point seems a little wobbly to me because that's what the Federal Court Claims Act does. It looks to the laws of 50 states. And so, Kim, you go to your previous point, which is this case, as I read it, it's a superior court case, and the liability is imposed upon a private contractor who is supposed to file this request, this paperwork, with the State Department of Labor and basically left it sitting in a drawer, I think. Right, so it's different also because this case involves the grant of a potential change of status. What a 360 does is it makes the person – it's a classification, grants them a classification. It makes them eligible to seek adjustment of status. So it's all related to a fundamental change of a person's relationship to the United States, the change of status, and that's different. Right, and that strikes me as the important part where I think somewhat rudely interrupted to try to make sure that we're understanding the word visa the same way because this is a work permit. This is a different – this in the 20HA letter I don't think does involve any kind of a change in status for the worker. That's the way I understand it. May I jump ahead a little bit and ask you what is your view of his current status vis-à-vis his ability to return to the United States or the Northern Marianas? So the government, from the time this case has been briefed in the district court, believes that he did not accrue any unlawful status. Well, okay. I'm sorry. I want to express a little federal government skepticism or frustration in terms of, I know it costs some money for you to come here. This lawsuit all costs some money. And the whole issue of whether there's a private analog or whether you should be sued, those are all separate and apart. But I know you claim that he, quote, did not accrue unlawful presence prior to his departure. Read brief at 21. But as Bouillon points out, you have never stipulated to this or provided evidence that this is true. In fact, it appears that Bouillon offered to stipulate to this fact, stating that it would fully resolve his second cause of action. But the government apparently declined. So how can we actually be sure that Bouillon did not accrue unlawful presence time, absent a stipulation from the government or a declaratory judgment? So this is a little Texas 2 step here. So, you know, tell me, you know, I don't know why the government says you don't have anything to worry about. Trust me. Why won't you stipulate? First answer, he's filed a suit. And he's filed a request for declaratory judgment. The court doesn't have Article III standing to address that claim because he, in two briefs in this district court, two briefs in the Court of Appeals, he's never even expressed an intent to come back to the United States at all, much less the kind of concrete request. We get that. But why didn't you stipulate? Point B is that the government. Why don't you stipulate then? The government doesn't write letters for people who are out of the country, opining on their potential immigration status. If the government had to start doing that, the USCIS is already completely over. Well, they don't do it regularly. But when you have a lawsuit and you're spending all this money on the lawsuit, if it's not really, it's a lot of money. Our position is we didn't need to stipulate because we've said in the briefs what the position of the United States is. The stipulation would be. So if the declaratory judgment is in fact right, then you're confessing judgment on that point. I'm not sure I'd say it's confessing judgment. I mean, we would say you don't have the authority to do that. But if you were to write an opinion and you were to say the United States says he did not accrue any unlawful presence, we would not object to that. But I'm just picturing him getting some petty bureaucrat and coming in and trying to do that. And they go, oh, we've never heard of anything about this. No, you're unlawfully present. You've got the brief of the United States, first of all, the Court of Appeals, which clearly takes that position. That should be plenty. And to go beyond that requires the agency to jump through hoops that this Court should not require because it doesn't have jurisdiction to do that to begin with. Well, we understand that. But let me peel that back a little bit. I want to understand analytically why you think that he didn't accrue unlawful presence. Right. Is it because of the humanitarian advance parole, the reopening, or what? Two reasons. All right. So just taking this step by step, until November 27, 2011, he had lawful nonimmigrant status from the CNMI. So at that point, then he eventually filed his I-485 application. That was initially denied. But it was reopened. And the government's position is the reopening of the I-485 as an operation of law eliminated any previous accrual of unlawful presence in the United States. Now, this is important, if I could say. He makes a mistake, a factual mistake, in his reply brief. The reply brief says that the I-485 that was reopened, that it was denied before he left the country. That is not true. What he was referring to is the denial of the I-360 visa application. So could we go back to reopening for a second? Because you were almost to what I wanted to ask. Is it the reopening, getting back to Chief Judge Thomas' question, did the reopening stop the accrual, or did it also wipe out any time that had accrued? Both. Okay. So just to finish up then, his I-485 was eventually, the reopened I-485 was eventually denied, but it wasn't until after he had left the CNMI. So for the entire, so that I-485, the reopening of which both eliminated any prior accrual of unlawful presence and going forward, that was valid all the way from 2011 until he left the CNMI. Now the second point is the parole point. So that's the second error in his reply brief. In his opening brief, he himself concedes that once the parole was granted, then that prevented the accrual of unlawful presence going forward. So he's incorrect about that. That alone wipes out what even would make him subject to the threat. So two different ways of looking at it, both of which are clearly supported by the record. And the eventual, you don't appear to think so. No, I'm just, this thing just broke under my foot. Oh, sorry. Sorry, please. Anyway, so two different reasons why. The eventual denial of the reopened I-485 is not in the record. I just didn't see it until last week, actually. So we'll send that in so you can see it. It's part of the administrative file. Would you be kind to submit a 28-J submission on that? Thank you. It's not actually in the record. Yes, I understand. Back to the FDCA point, again, I think the El Gamal case, which was decided after the briefs were filed, is right on point. It's unpublished, so it's not binding precedent. But it's about as close as you can get. It's important that the plaintiff there argued that there was a state law duty that an insurer must act reasonably in handling an insurance application. And this court sort of took that for granted. So, okay, we're going to just assume that there is this duty. And the court said, even though there's this duty, it's not sufficiently analogous, again, to what a USCIS officer does in granting or denying a visa petition. And I think that settles the case. As the court explained, I like to quote it, it says the relationship between an adjustment of status applicant and USCIS is not analogous to the relationship between an applicant and an issuer. And that is our basic point. The Second Circuit adopted this rule in the Akutovic's case. And the district court followed Akutovic's. And if you were to decide differently, you'd be going into conflict with the Second Circuit, which you, of course, can do. But I think there's no reason to do it because it's correct. And then the final case I wanted to point you to is the Woodbridge Plaza case from this court. At Woodbridge Plaza, the plaintiffs alleged that the FDIC wrongly excluded a claim when it basically bought a bank and then transitioned the bank, that the bank went bad. And the court said, again, even though the court assumed that there was a state law duty that would be relevant, it wasn't analogous to the federal law duty. And it pointed to the fact that the Miller Act exclusively and extensively regulated how the FDIC goes about regulating and buying and transitioning these banks. And it said there's no sense in which Congress would have wanted the law of 50 states to direct the FDIC how to do these tasks, you know, through the medium of state tort law. So, again, I think you'd have to go into conflict with which actually is a published opinion. And we've given the court the number of other cases from the other circuits, including this circuit, that we think is positive. And I believe that actually covers what I wanted to say, but I'd be happy to take any further questions if the court has any. Well, I gather that the position of the United States is, right now, that if he met the other visa requirements for coming back to the Northern Marianas, there is no independent impediment for him to lawfully return to the Northern Marianas or the United States. Is that right? So I think the way I would put it is that he did not accrue any unlawful presence, and so the unlawful presence part of whether he would be entitled to reenter goes away, right? So there's no bar based on that. So he's not pre-dermitted on that. Correct. As to anything else, I know nothing about whatever it could be, any number of things. Right. That's why I said if he met the other visa requirements. Exactly. Okay. Thank you, counsel. Thank you. We'll hear rebuttal. Yes, Your Honor. With respect to the Tort Claims Act case, the Supreme Court in Olson and in Indian Towing has rejected the contention that there is no liability for negligent performance of uniquely governmental functions. And I think that's where counsel is really going. So, counsel, counsel, if we were to conclude that a visa application is quasi-adjudicative, is that a death knell for you? No, I don't think it is, Your Honor, because I don't think, I think this whole quasi-adjudicative idea that's coming from Akutowicz and from its predecessors is overlooking something important, which it's overlooking part of the statute itself. The exceptions that are put into the Federal Tort Claims Act at 28 U.S.C. 2680A, there are exceptions which says under these circumstances, the government shall not be liable. And I think that takes care legislatively of the problem that these courts like Akutowicz and Elgamal, for that matter, are trying to solve through, you know, close construction of this like circumstances idea. It's actually dealt with by statute where it says, any claim based upon the act or omission of an employee of the government exercising due care, exercising due care in the execution of a statute or regulation, or based upon the exercise or performance or the failure to exercise or perform a discretionary function, there is no liability to the government in that situation. You have the discretionary function exception and you have the executing a statute of regulation exception with due care. Because that takes care, I think, of the whole quasi-adjudicative exercise of discretion problem that the courts are trying to address. And it is a valid concern that a quasi-adjudicative body not have the threat of liability hanging over its head while it's adjudicating. But what you have here, so that's already taken care of by statute. And why is that exception in the statute? Because otherwise there would be liability. Under the Tort Claims Act, in its form without the exception, there would be liability. That's why you need the exception. It's the exception that proves the rule. It's built into the statute without the necessity of close or nice construction of what's meant by like circumstances. But at this point, in this case, it hadn't reached the discretionary phase. It had just reached this ministerial act. Is it less than two years or is it more than two years? Now the case of Appleton that we said in our brief makes a nice point about that where it says that the granting of a license usually entails some degree of discretion. That is not necessarily so in all cases, particularly with regard to an initial determination of eligibility. And it's quoting there the Hoffman case from Michigan which goes on that where you have clear standards to be applied to a fact situation in order to determine basic eligibility. The claim of negligence in the application of that standard does not involve a discretionary function. So we're still at that preliminary clerical ministerial step where all you're looking at is is it more than two years, is it less than two years? There's no exercise of discretion. There's no quasi-adjudicative action going on here. There is possibly the execution of a statute or regulation but not with due care. The whole point is it's done without due care. And so what you have here is something that's not covered by the exception. Thank you very much. You're over your time. So I just wanted to tell you to wrap up and make any concluding remarks you want. Thank you. Thank you, counsel. Thank you. The case is to argue to be submitted for decision and will be in recess for the morning. All rise. Thank you. Thank you.
judges: Thomas, Callahan, Christen